UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ANGEL REIF,

        Plaintiff,

v.                                                                             Case No. 18-C-884

ASSISTED LIVING BY HILLCREST LLC
d/b/a BRILLION WEST HAVEN and
KARI VERHAGEN,

        Defendants.

**DECISION AND ORDER GRANTING-IN-PART
MOTION FOR PARTIAL DISMISSAL**

Plaintiff Angel Reif sued her former employer, Assisted Living by Hillcrest LLC, doing business as Brillion West Haven (ALBH), for interference and discrimination in violation of the Family Medical and Leave Act of 1993 (FMLA), as amended 29 U.S.C. § 2601 *et seq.* Reif also asserted state law claims for promissory estoppel and misrepresentation against ALBH and Kari Verhagen, ALBH's Human Relations Coordinator. The court has jurisdiction under 28 U.S.C. § 1331. The case is before the court on Defendants' motion for dismissal of all claims except the promissory estoppel claim against ALBH. For the reasons set forth below, Defendants' motion to dismiss will be granted-in-part. Defendants' motion will be granted as to Reif's claims for intentional and negligent misrepresentation and her promissory estoppel claim against Verhagen. It will be denied in all other respects.

## LEGAL STANDARD

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014); Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the pleaded facts allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. When reviewing a motion to dismiss for failure to state a claim, a court must accept all well-pleaded facts as true and view them in a light most favorable to the plaintiff. *Doe v. Vill. of Arlington Heights*, 782 F.3d 911, 914–15 (7th Cir. 2015).

## ALLEGATIONS OF THE AMENDED COMPLAINT

ALBH operates assisted living facilities throughout the State of Wisconsin, including a facility in Brillion, Wisconsin. Verhagen is the Human Resources Coordinator for ALBH. On January 25, 2017, ALBH hired Reif as an administrative assistant at its Brillion facility.

During the course of her employment at ALBH, Reif experienced significant pain in her right hip and knee due to an abnormal gait she had adopted in response to an unsuccessful repair of a tear to her Achilles tendon she sustained in 2003. On or about January 2, 2018, Reif's doctor advised her that surgically repairing her Achilles would improve her gait and significantly reduce the pain and difficulty she was experiencing.

On or about January 9, 2018, Reif met with Verhagen and informed her of her intent to undergo the surgery when she became eligible for FMLA leave. Verhagen informed Reif that she was not eligible for FMLA leave until January 25, 2018, the date on which Reif would have been employed at ALBH for twelve months. Reif thereupon contacted her doctor and scheduled her surgery for January 31, 2018. Reif then informed Verhagen of the date of her surgery and of her intent to apply for and utilize FMLA leave from work as of that date.

On the same day, after consulting with Amy Doolittle, ALBH's Executive Administrator, about Reif's medical condition, Verhagen told Reif that she needed to immediately "punch out and go home until [she was] completely healed from surgery." Am. Compl. ¶ 27, ECF No. 15. Although Reif was not under any restrictions from her doctor, Verhagen told Reif that Doolittle had instructed her to send Reif home because she was a liability and because ALBH did not want her to injure herself further and file a worker's compensation claim for her pre-existing injury. Verhagen also told Reif that she needed to schedule her surgery as soon as she could and that she would work with her so that her FMLA would be approved. Verhagen also assured Reif that her job as an administrative assistant would still be there for her when she returned.

Given her sudden loss of income and in reliance on Verhagen's assurances, Reif contacted her doctor and was able to move her surgery up to January 17, 2018. On January 10, 2018, Reif submitted to ALBH an FMLA application for leave with a start date of January 17, 2018. She underwent the surgery on that date. On January 22, 2018, Reif received a letter from ALBH signed by Verhagen and dated January 19, 2018, acknowledging receipt of her request for FMLA leave but advising that she did not meet the eligibility requirements for FMLA leave. On January 24, 2018, Verhagen informed Reif that ALBH would not hold her position. On January 25, 2018, ALBH

received a certification from Reif's doctor that she was able to return to work full-time on January 22, 2018, with work restrictions of "non-weight bearing to right leg with use of assistive device for mobility to do complete job duties." *Id.* at ¶ 43. On February 9, 2018, Verhagen informed Reif that ALBH had filled her position.

Based on these allegations, Reif has asserted claims under the FMLA that ALBH interfered with her right to take medical leave and then discriminated against her by terminating her employment because of her attempt to do so. Reif has also asserted claims for promissory estoppel and intentional and negligent misrepresentation.

**ANALYSIS**

**A. FMLA Claims**

The FMLA allows any eligible employee with a serious health condition that renders the employee unable to perform her employment duties to take up to twelve workweeks of leave during each twelve-month period. 29 U.S.C. § 2612(a)(1)(D); *Goelzer v. Sheboygan Cty., Wis.*, 604 F.3d 987, 992 (7th Cir. 2010). Employers are prohibited from interfering with rights provided under the FMLA and from discriminating against employees who assert those rights. *See* 29 U.S.C. § 2615(a); *Nicholson v. Pulte Homes Corp.*, 690 F.3d 819, 825 (7th Cir. 2012). Section 2615(a)(1) prohibits employers from interfering with, restraining, or denying the exercise of or the attempt to exercise any right provided under the FMLA. Section 2615(a)(2) prohibits employers from discharging or in any other manner discriminating against any individual for opposing any practice made unlawful under the FMLA. Reif alleges that ALBH both interfered with her attempt to lawfully take FMLA leave and discriminated against her on account of such attempt. ALBH contends that Reif's FMLA

4

claims fail because at the time she requested leave and had her surgery, she was not yet eligible for FMLA leave.

An "eligible employee" for FLMA purposes is defined as "an employee who has been employed—(i) for at least 12 months by the employer with respect to whom leave is requested under section 2612 of this title; and (ii) for at least 1,250 hours of service with such employer during the previous 12-month period." 29 U.S.C. § 2611(2)(A); *see also Dormeyer v. Comerica Bank-Ill.*, 223 F.3d 579, 582 (7th Cir. 2000) ("The statutory text is perfectly clear and covers the issue [of leave eligibility]."). "The determination of whether an employee meets the hours of service requirement and has been employed for a total of at least 12 months must be made as of the date the FMLA leave is to start." 29 C.F.R. § 825.110(d). ALBH argues that, because Reif would not have become eligible for FMLA leave until January 25, 2018, her absence from work from January 9th through January 22nd was not covered by the FMLA and her claims therefore fail.

ALBH would be on solid ground as far as the FMLA is concerned if Reif had simply taken off for her surgery on her own prior to becoming eligible for FMLA leave. But according to the allegations of the complaint, which remember must be accepted as true at this stage of the proceedings, that is not what happened. According to the amended complaint, Reif gave Verhagen notice on January 9th of her intent to request FMLA leave after her surgery on January 31st, six days after she would have become eligible. After consulting with Executive Administrator Doolittle, Verhagen then told Reif she needed to begin her leave immediately, even though there was no medical reason requiring her to do so. The complaint further alleges that Verhagen encouraged Reif to move her surgery up and assured her she would receive FMLA leave and her job would be waiting for her.

5

If these allegations turn out to be true, then ALBH may be estopped from refusing to grant Reif FMLA leave. *See Dormeyer*, 223 F.3d at 582 (noting that "an employer who by his silence misled an employee concerning the employee's entitlement to family leave might, if the employee reasonably relied and was harmed as a result, be estopped to plead the defense of ineligibility to the employee's claim of entitlement to family leave"). Reif alleges more than just silence by her employer. It would be fundamentally unfair to allow an employer to force an employee to begin a non-emergency medical leave less than two weeks before she would become eligible under the FMLA, assure her that she would receive leave and her job would be waiting for her when she returned, and then fire her for taking an unauthorized leave.

Even without invoking the equitable doctrine of estoppel, however, it appears that Reif's FMLA claims survive. As the Eleventh Circuit held in *Pereda v. Brookdale Senior Living Communities, Inc.*, "[w]ithout protecting against pre-eligibility interference, a loophole is created whereby an employer has total freedom to terminate an employee before she can ever become eligible." 666 F.3d 1269, 1273 (11th Cir. 2012). "Such a situation," the court noted, "is contrary to the basic concept of the FMLA." *Id.* In *Pereda*, the plaintiff employee, who previously gave notice that she would be requesting FMLA leave after the birth of her child, alleged that she was terminated eleven months after she began her employment and only one month before her eligibility for FMLA leave would have commenced. The district court dismissed her claims for interference and retaliation in violation of the FMLA on the ground that she was not covered by the FMLA at the time of her termination. The Eleventh Circuit reversed, noting that such a result was inconsistent with the advanced notice requirements of the FMLA. The FMLA requires employees where possible to give advanced notice to their employer of extended absences. 29 U.S.C. § 2612(e)(2). The court

held in *Pereda* that, "because the FMLA requires notice in advance of future leave, employees are protected from interference prior to the occurrence of a triggering event, such as the birth of a child." 666 F.3d at 1274. Without a remedy, the court observed, "the advanced notice requirement becomes a trap for newer employees and extends to employers a significant exemption from liability. Such an interpretation is inconsistent with FMLA and the purpose of the Act." *Id.* (internal citation omitted); *see also Reynolds v. Inter-Industry Conference on Auto Collision Repair*, 594 F. Supp. 2d 925 (N.D. Ill. 2009) (holding that employee had cause of action under FMLA based on alleged discrimination for requesting future leave that was to begin after date of eligibility).

Based on the allegations of the amended complaint and for the reasons set forth in *Dormeyer* and *Pereda*, Reif's FMLA claims survive. ALBH's motion to dismiss the interference and discrimination claims is therefore denied.

## B. State Law Claims

In addition to her FMLA claims against ALBH, Reif asserts state law claims of intentional misrepresentation, negligent misrepresentation, and promissory estoppel against ALBH and Verhagen. Reif has failed to state claims of intentional and negligent misrepresentation. Under Wisconsin law, "[t]he breach of an employment contract is not actionable in tort" and "[t]here must be a duty existing independently of the performance of the contract for a cause of action in tort to exist." *Tatge v. Chambers & Owen, Inc.*, 219 Wis. 2d 99, 107, 579 N.W.2d 217 (1998) (citation omitted); *see also Mackenzie v. Miller Brewing Co.*, 2001 WI 23, ¶ 1, 241 Wis. 2d 700, 623 N.W.2d 739 ("[T]hose who are party to an at-will [employment] contract must seek recourse in contract rather than tort law."). In *Tatge*, the Wisconsin Supreme Court considered a misrepresentation claim in the at-will employment context and held that "no duty to refrain from misrepresentation exists

7

*independently* of the performance of the at-will employment contract." 219 Wis. 2d at 108; *Mackenzie*, 2001 WI 23, ¶ 13 ("None of our decisions, however, has abrogated the at-will doctrine by recognizing the tort of misrepresentation in the employment context. In fact, our recent decision in *Tatge* expressly forecloses such a cause of action."). The *Tatge* rule applies to both intentional and negligent misrepresentation claims. *Mackenzie*, 2001 WI 23, ¶ 15.

Reif's effort to transform her misrepresentation claims into a claim for breach of an implied duty of good faith and fair dealing fares no better. Reif cites *Beidel v. Sideline Software, Inc.*, 2013 WI 56, 348 Wis. 2d 360, 842 N.W.2d 240, as authority for her argument, but that case dealt with a written stock purchase agreement with a related employment provision. It had nothing to do with an at-will employment arrangement such as Reif's. Leaving aside the fact that the amended complaint asserts tort claims for misrepresentation, as opposed to contract claims, the argument that the implied duty of good faith and fair dealing in contracts in general can give rise to a duty of good faith in the termination of an at-will employment contract was explicitly rejected by the Wisconsin Supreme Court in *Brockmeyer v. Dunn & Bradstreet*, 113 Wis. 2d 561, 569, 335 N.W.2d 834 (1983). *Beidel* did not overrule, or even discuss, *Brockmeyer*. Reif's misrepresentation claims therefore fail and will be dismissed.

Reif has also failed to state a promissory estoppel claim against Verhagen. To state a claim for promissory estoppel under Wisconsin law, a plaintiff must allege that (1) the promise is one which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee; (2) the promise induced such action or forbearance; and (3) injustice can be avoided only by enforcement of the promise. *Scott v. Savers Prop. & Cas. Ins. Co.*, 2003 WI 60, ¶ 51, 262 Wis. 2d 127, 663 N.W.2d 715. "A promise is a manifestation by

8

the promisor to be bound, and is to be judged by an objective standard." *Major Mat Co. v. Monsanto Co.*, 969 F.2d 579, 583 (7th Cir. 1992). The "critical requirement is that the 'promise' be 'one that the promisor should reasonably have expected to induce either action or forbearance' by the plaintiff." *Knauf Realty, LLC v. Prudential Real Estate Affiliates, Inc.*, 486 F. Supp. 2d 855, 861 (W.D. Wis. 2007) (quoting *U.S. Oil Co. v. Midwest Auto Care Servs., Inc.*, 150 Wis. 2d 80, 89, 440 N.W.2d 825 (Ct. App. 1989)). "Otherwise, the promisee has no basis for insisting upon enforcement of the promise." *Id.* Reif alleges that ALBH, "through its agent Defendant Verhagen," promised to continue to employ Reif following her surgery. Am. Compl. ¶ 60, ECF No. 15. This allegation names Verhagen in her capacity as ALBH's agent, but it does not speak to Verhagen in her individual capacity. According to the complaint, Verhegan's statements to Reif were made at the direction of Doolittle and on behalf of ALBH. Because the promise at issue here is Reif's continued employment and because ALBH, not Verhagen, is Reif's employer, Reif has no basis for insisting upon enforcement of an employment promise against Verhagen in her individual capacity. As a result, Reif's promissory estoppel claim against Verhagen must be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (ECF No. 16) is **GRANTED-IN-PART** with respect to Reif's intentional and negligent misrepresentation claims against all Defendants, and promissory estoppel claim against Defendant Verhagen, and **DENIED** in all other respects. The clerk is directed to set the matter on the court's calendar for a telephone scheduling conference pursuant to Rule 16.

**SO ORDERED** this   6th   day of November, 2018.

                                            s/ William C. Griesbach
                                            William C. Griesbach, Chief Judge
                                            United States District Court